UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

      Case No. 24-cr-20358
      Honorable Linda V. Parker

EDWARD CLAY,

      Defendant.
_____/

**<u>OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT (ECF No. 17)</u>**

Defendant Edward Clay ("Defendant") is charged in a one-count indictment with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1.) This matter is before the Court on Defendant's Motion to Dismiss Indictment based on the alleged unconstitutionality of 18 U.S.C. § 922(g)(1) as applied to Defendant. (ECF No. 17.) For the reasons described below, the court **DENIES** the motion.

**I.    SECOND AMENDMENT FRAMEWORK**

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court established a

two-step framework for analyzing whether an individual's Second Amendment rights were violated and held that the regulation of those rights must be consistent with the "Nation's historical tradition of firearm regulations." 597 U.S. at 17.

To assess the constitutionality of a firearms regulation under the new framework in *Bruen*, the Court must follow a two-step approach. First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17. Second, when a regulation burdens such presumptively protected conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

## *Bruen* Analysis of § 922(g)(1)

The Court of Appeals recently clarified the impact of *Bruen* on Sixth Circuit precedent concerning the constitutionality of § 922(g)(1) in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024). The *Williams* court began its *Bruen* analysis by thoroughly reviewing the plain text of the Second Amendment. *Id.* at 648–650.

The court rejected the argument that usage of terms such as "law-abiding" and "responsible" in *Bruen* and earlier Supreme Court case law justify barring felons from exercising their Second Amendment rights. *Id.* at 645–647. Instead, the court pointed to *Heller*'s direct assertion that the right to bear arms "belongs to

all Americans" and not an "unspecified subset." *Id.* at 646 (citing *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008)). Ultimately, it found that the Second Amendment presumptively protects a felon's right to possess a firearm and thus, passed to the second step of the *Bruen* analysis. *Id.* at 649.

The court then conducted an extensive historical analysis, as required by *Bruen*, and reached the conclusion that "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous." *Id.* at 657. The Sixth Circuit found that in light of the nation's history and tradition, "most applications of § 922(g)(1) are constitutional" and the statute is constitutional on its face and "as applied to dangerous people." *Id.* at 646. However, the court left open the possibility of an as-applied challenge should a defendant prove he is not dangerous "and thus falls outside of § 922(g)(1)'s constitutionally permissible scope[.]" *Id.* It is the role of the district court to make this dangerousness determination.

## *Williams* Framework

The *Williams* court then provided three categories under which to view a defendant's past conduct to guide the dangerousness analysis. In the first category are crimes against the person, such as "murder, rape, assault, and robbery." *Williams*, 113 F.4th at 658. The court noted that a history of violent crimes like these are "strong evidence that an individual is dangerous." *Id.* In the

second category are crimes that, "while not strictly crimes against the person, may nonetheless pose a significant threat of danger," such as drug trafficking and burglary. *Id.* at 659. The court also implied that a prior conviction for felon in possession of a firearm falls into this second category. *Id.* at 662. The court stated that convictions for these crimes will often "put someone's safety at risk, and thus, justify a finding of danger." *Id*. at 659. The court emphasized that a person who falls into the first two categories will have a very difficult time showing he or she is not dangerous. *Id.*

In the final category are "crimes that cause no physical harm to another person or the community," such as mail fraud and making false statements. *Id.* The court stated that these cases are a "more difficult category," but that district courts will likely "have no trouble concluding that many of these crimes don't make a person dangerous." *Id.*

When evaluating a defendant's dangerousness, a court may consider a defendant's entire criminal record—not just the specific felony underlying the § 922(g)(1) charge. *Id.* Courts may also consider any evidence of past convictions in the record, as well as other judicially noticeable information, when assessing a defendant's dangerousness. *Id.* at 660. However, the question of what information is relevant to determine dangerousness and the weight to give such evidence was intentionally left open by *Williams*.

Nevertheless, the Sixth Circuit compared the assessment to dangerousness determinations made under 18 U.S.C. §§ 3142 and 3553. *Id.* at 657. The dangerousness determination must be "fact-specific, depending on the unique circumstances of the individual defendant." *Id.* at 661. The defendant bears the "extremely heavy" burden of showing that he is not dangerous. *Id.* at 658, 662.

Since *Williams*, when determining dangerousness, the Sixth Circuit has considered both the conduct which led to the defendant's § 922(g)(1) charge and whether the defendant was on supervised release when he or she accumulated the charge. *See United States v. Vaughn*, No. 23-5790, 2024 WL 4615853 at *2 n.2 (6th Cir. Oct. 30, 2024) (concluding that "[t]he fact that Vaughn's § 922(g)(1) conviction resulted from an incident where he shot at an individual certainly would lend to a showing of his dangerousness"); *see also United States v. Goins*, 118 F.4th 794 (6th Cir. 2024) (finding disarming individuals on parole, probation, or supervised release to be consistent with the nation's history and tradition).

## II.  ANALYSIS

Applying *Williams* to the facts of this case, the Court finds that the Defendant is dangerous and can be constitutionally disarmed. Defendant argues that the burden is likely on the government to prove he is dangerous for the purposes of the Second Amendment analysis. (ECF No. 17.) However, the plain language of *Williams* makes clear that it is the defendant's "burden to demonstrate

that he is not dangerous." *Williams*, 113 F.4th at 658.  Consequently, Defendant must make "an individualized showing that he himself is not actually dangerous," considering his individual characteristics and "entire criminal record" for his as applied challenge to succeed.  *Id.* at 663.

As an initial matter, the Court may consider the conduct which led to the instant charge when making a dangerousness determination.  *See Goins*, 118 F.4th at 804; *Vaughn*, 2024 WL 4615853 at *2 n.2.  In this case, Defendant allegedly participated in an armed robbery in August 2023, and the investigation of the robbery led the police to Defendant's residence where six firearms were found.  Defendant's DNA was found on one of the firearms and charges against him are pending in state court in connection with the robbery.  The *Williams* court found that a conviction for robbery alone was sufficient to find a defendant dangerous. *Williams*, 113 F.4th at 662.  Although this is not dispositive in this case as the Defendant has not been convicted of this charge, it weighs in favor of a finding of dangerousness.

The Court next turns to a review of Defendant's criminal history.  First, in 1998 Defendant pleaded guilty to selling/furnishing marijuana.  In 2002, Defendant pleaded guilty to felon in possession of a firearm and possession with intent to distribute a controlled substance (ecstasy).  In 2007, Defendant pleaded guilty to carrying a concealed weapon and possession with intent to distribute

marijuana. In 2017, Defendant pleaded guilty to transporting and/or selling marijuana. Finally, in 2024, Defendant pleaded guilty to breaking and entering in connection with the theft of marijuana cultivation equipment which took place in October of 2023. (ECF Nos. 19-4, 19-5.)

Defendant's convictions for possession with intent to distribute a controlled substance, breaking and entering, and felon in possession of a firearm fall squarely into the second *Williams* category and are sufficient to find Defendant dangerous. Like drug trafficking and burglary, these crimes "do not always involve an immediate and direct threat of violence against a particular person," however there is still a presumption that these "crimes put someone's safety at risk, and . . . justify a finding of danger." *Williams*, 113 F.4th at 659 (citing *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010)). Defendant's felon in possession conviction alone is enough to render the Defendant dangerous. *See Williams*, 113 F.4th at 662. However, the repeated nature of Defendant's convictions also supports a finding of dangerousness. *See Goins*, 118 F.4th 794 at 797 (defendant's "repeated actions demonstrated a likelihood of future dangerous conduct"). It is also notable that Defendant's 2002 and 2007 convictions involved illicit firearm possession in connection with drug trafficking, which increases the danger of the drug sales.

The 2024 conviction for breaking and entering is particularly concerning and leads to a strong inference of dangerousness due to its recency and the fact that it

posed a risk of a violent confrontation. It is also concerning that Defendant committed the instant offense while on pretrial release for that charge. Reviewing his entire criminal record, the Court finds that Defendant is dangerous and can be constitutionally disarmed.

Defendant argues that his release on bond indicates he is not dangerous. Although pretrial release may mitigate a finding of dangerousness, it is not dispositive. *See United States v. Jennings*, No. 2:24-CR-20173-TBG-EAS, 2024 WL 4560602 at *5 (E.D. Mich. Oct. 24, 2024). The 18 U.S.C. § 3142 and *Williams* analyses do involve some similar considerations, however, the "evaluation of dangerousness to decide whether to *detain* someone before trial involves considerations that are different from the ones to decide whether to *restrict* firearm possession for an individual convicted of a felony." *Id.* (emphasis in original). Furthermore, there is a presumption of release under the Bail Reform Act while under the *Williams* analysis there is a presumption in favor of disarmament. Although Defendant's pretrial release, employment history, and current compliance with bond conditions weigh against a finding of dangerousness, these factors are insufficient to outweigh his serious, recent, and repeated prior convictions.

After carefully considering Defendant's entire criminal record, the Court finds that the application of 18 U.S.C. § 922(g)(1) to Defendant is constitutional.

Defendant offers no compelling evidence or argument to undermine a finding of dangerousness. In addition to the danger posed by the Defendant's prior conduct, his number of prior convictions, the recency of his last conviction, and the fact that the conduct which led to this charge occurred while Defendant was on pretrial release all support a finding of dangerousness. Accordingly, Defendant's as applied challenge fails.

### III.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion to Dismiss Indictment is **DENIED**.  (ECF No. 17.)

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: January 6, 2025